## Case No. 9,821.

### In re MORRILL.

[2 Sawy. 356;[1] 8 N. B. R. 117.]

District Court, D. Nevada. March 17, 1873.

BANKRUPTCY—SURETY—SECTION 19 OF BANKRUPT ACT—CHATTEL MORTGAGE—POSSESSION IN MORTGAGOR.

1. A surety may pay the debt for which he is contingently liable, so as to satisfy the requirements of section nineteen of the bankrupt act [of 1867 (14 Stat. 525)], by giving his individual note, if such note is expressly received as payment.

2. A mortgage fraudulent and void as to creditors, is so as to the assignee in bankruptcy.

3. By statute in Nevada, a chattel mortgage is void as to creditors, unless immediate possession of the mortgaged property is taken and retained by the mortgagee.

4. Independent of the statute, a mortgage of goods is fraudulent and void as to creditors, if the mortgagor is allowed to remain in possession of and sell and traffic with them as his own.

Petition filed by John Piper, praying that a security proved by him may be adjudged a valid lien upon certain personal property now in the possession of, and about to be sold by, the assignee. The material facts are these: In the fall of 1866, the bankrupt was the owner of a drug store in Virginia City, and being indebted to Hostetter, Smith & Dean, of San Francisco, conveyed the whole stock and business to them, with a verbal understanding that when paid out of the business they should convey the property back to him. In January, 1867, [George P.] Morrill went back into possession of the store and goods, and carried on business as agent of Hostetter, Smith & Dean, and so continued until May 1 of that year, at which time one Van Voorhies, a brother-in-law of Morrill, at Morrill's request, advanced $4,000 to Hostetter, Smith & Dean, and took from them a bill of sale, absolute on its face, but accompanied with a verbal understanding between Morrill and himself, that when he was paid he should deed back to Morrill. There was no change of possession at this time. Morrill remained in the store conducting the business, as he says, as agent of Van Voorhies. This continued until May 31, 1870, Morrill, in the meantime, making some payments out of the proceeds of the business to Van Voorhies. On the last named date, Morrill induced Piper, the petitioner, to join him in making a joint and several note to one Drexler for $1,200. The money so raised, being the balance due him, was paid to Van Voorhies, and under Morrill's direction he made a bill of sale to Piper. This bill of sale was absolute on its face, and purported to convey to Piper the whole stock of drugs, property used in carrying on the business, and fixtures. It was, however, accompanied with this verbal understanding: That Morrill should remain in possession, and carry on the business in his own name, until such time

as Piper should please to take possession; that when Piper did take possession he was not to "sell out the business," but conduct it until he was paid, or the note on which he was liable for Morrill had been paid out of the proceeds. After this bill of sale, Morrill remained in possession, put up a sign bearing his own name, and carried on the business in his own name, buying, selling and dealing with the property, in all respects, as owner. Piper never attempted to take possession until October, 1872, when Morrill, fearing other creditors of his would put him into bankruptcy, sent word to Piper, by one Kaneen, a mutual friend, that he had better take possession, whereupon a new bill of sale of everything in and about the store was made by Morrill to Piper, and possession taken by him about a month before the commencement of proceedings in bankruptcy against Morrill. Piper took possession, in the language of Morrill, with the understanding that he was to carry on the business until the receipts paid him; he was not to sell out the business; and after Piper was thus paid, he was to deed back to him, Morrill. Before proving his claim, Piper gave Drexler his individual note in payment of the joint one of himself and Morrill, taking a receipt from Drexler, which shows that the new note was received in full payment of the old one.

Mitchell & Stone, for petitioner.
David Bixler, for respondent.

HILLYER, District Judge. Piper being, as between himself and Morrill, a surety, the assignee objects that he has not paid the debt for which he was contingently liable, as he is required to do by section nineteen of the bankrupt act, before he is entitled to prove his claim. Piper's individual note having been received expressly as payment, satisfied the original contract. Drexler's remedy upon it is gone. Piper, therefore, has paid the debt. Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253; Downey v. Hicks, 14 How. [55 U. S.] 240; In re Ouimette [Case No. 10,622].

It was next argued very earnestly for Piper that, admitting the transfer to be fraudulent and void as to creditors, if it is good as between Morrill and Piper, the assignee in bankruptcy represents the bankrupt, takes the property subject to all equities existing at the time of commencement of proceedings in bankruptcy, and cannot avoid a transfer which the bankrupt could not. This is no longer an open question in this circuit since the decision of Sawyer, Circuit Judge, in Edmondson v. Hyde [Case No. 4,285], holding expressly that if a transfer of property is void as to creditors it is so as to the assignee; and since Judge Sawyer's decision the supreme court of the United States has upheld the same doctrine, saying that when a sale is fraudulent and void as to the

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

creditors of the bankrupt, the assignee is authorized by the express terms of the fourteenth section of the bankrupt act to pursue the property so attempted to be transferred. Allen v. Masey, 17 Wall. [84 U. S.] 352.

The principal question in the case remains. If the conveyance to Piper is to be regarded, as it was on the argument, as a mortgage, is it a valid security as against the creditors of Morrill? It is not, for two reasons:

Firstly—It is invalid, except between the parties, because Piper did not take and retain possession as required by law. Section sixty-six of an act of the state of Nevada concerning conveyances contains this provision: "No mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee." This provision is copied word for word from a statute of California, and, at the time of its adoption, had been construed by the supreme court of that state, so that it may be presumed the language was used with reference to the interpretation given it by the courts of the state whence it was taken. State v. Parkinson, 5 Nev. 15. The construction given by the supreme court of California is, that the delivery of possession must be immediate, and that a mortgage, void at its inception for want of such delivery, is not made valid by a subsequent taking of possession before a creditor acquires his lien. Chenery v. Palmer, 6 Cal. 121; Woods v. Bugbey, 29 Cal. 471; Edmondson v. Hyde, supra.

This, it seems to me, is the true rule, and carries out effectually the intention of the legislature. The weight of authority in this country seems to be that in these cases, in the absence of any statute law to the contrary, fraud is a question of fact for a jury, and that the retention or possession by a vendor or mortgagor is not per se fraud. Warner v. Horton, 20 How. [61 U. S.] 448. And, also, that a delivery of possession before a creditor acquires a lien on the goods is sufficient. Clute v. Steele, 6 Nev. 335, and cases there cited. The section in question is, then, not merely declaratory of the common law; it is remedial. In the first place, since the statute, the retention of possession by the mortgagor is fraud, per se, as to all persons except the parties, and no longer a question of fact for the jury. In the second place there must be a change of possession at the time the mortgage is made, thus curing that defect in the common law which allowed the mortgagor to remain in possession of the mortgaged property, notwithstanding the mortgage, and enabled him to appear as owner of the goods, to those dealing with him, and obtain a false credit upon the strength of this possession and apparent ownership. To hold that the mortgagee, after permitting the mortgagor to retain possession of the mortgaged property more than two years, can, as is argued, by taking possession a short time before the bankruptcy proceedings are commenced, make his mortgage good as against those who have become creditors of the mortgagor during those two years, will strip of all remedial force and practically repeal this statute, and this I shall not be the first judge to do. The case of Clute v. Steele, supra, in which the supreme court of Nevada held, upon a sale of personal property not accompanied with an immediate change of possession, "that a delivery before the attachment of any lien of a creditor will satisfy the law and validate the sale," is not decisive in this case. The court was dealing with other sections of the statute, the language of which differs essentially from section sixty-six.

Secondly—This mortgage is fraudulent and void as to creditors, independent of the statute. Taking the bill of sale and accompanying agreement together, it appears that, notwithstanding the mortgage, the mortgagor was to remain in possession of the goods and continue to sell and traffic with them as his own, so long as the mortgagee pleased. This was, in fact, done for over two years with the knowledge and acquiescence of the mortgagee. There is, on this point, a direct conflict among the state courts not to be reconciled. In some, as in those of Massachusetts, Maine and Michigan, the fact that the mortgagor is left in possession with permission to sell and deal with the goods, is considered presumptive evidence of fraud only, which may be explained by proof that the mortgage was in fact bona fide. The weight of authority, however, in the state courts appears to be that the fraud in such case is an inference of law, and that as to creditors the mortgage is void. Such is the rule in New York, New Hampshire, Ohio, Illinois and some other states, and which is decisive here in the supreme court of the United States. In Leavenworth v. Hunt, 11 Wall. [78 U. S.] 391, the mortgagors remained in possession of the goods, and the testimony tended to show that they continued to sell the goods with the assent of the mortgagee, and the court says: "If the facts were found by the jury, which the testimony tended to establish, the mortgage was fraudulent and void as to creditors," citing Griswold v. Sheldon, 4 Comst. [4 N. Y.] 581; and Wood v. Lowry, 17 Wend. 492. See, also, Lukins v. Aird, 6 Wall. [73 U. S.] 78; Paul v. Crocker, 8 N. H. 288; Catlin v. Currier [Case No. 2,518].

The second bill of sale to Piper was so clearly a void transfer under the thirty-fifth section of the bankrupt act, that all claim under it was abandoned on the argument. So much of Piper's proof as sets up a security must be expunged from the assignee's record of claims. It is so ordered.